WhitakeR, Judge,
delivered the opinion of the court:
Plaintiff in this case sues for the difference between fifty percent of his base and longevity pay from April 20, 1935 io November 22, 1930, allowed by law to “flying officers,” *268 and the amount he received as a nonflying officer. He claims that during this period he was a flying officer as defined by the applicable statutes. These statutes provided for additional pay for a flying officer of 50 percent of their base and longevity pay when they were required to participate regularly and frequently in aerial flights, but they limited the additional compensation to nonflying officers for regular and frequent participation in aerial flights to $1,440 per annum for a portion of the period, and to $720 per annum for the balance of the period. 'Plaintiff has been paid the extra pay provided for nonflying officers, and sues for the increased allowance to which he claims he is entitled as a flying officer. It is conceded that plaintiff did participate regularly and frequently in aerial flights sufficiently to entitle him to the compensation he seeks, if he was a “flying officer.”
Section 2 of the Act of July 2, 1926 (44 Stat. 780, 781) defines a flying officer as follows:
* * * Wherever used in this Act a flying officer in time of peace is defined as one who has received an aeronautical rating as a pilot of service types of aircraft : Provided, That all officers of the Air Corps now holding any rating as a pilot shall be considered as flying officers within the meaning of this Act * * *.
Under this Act plaintiff is not entitled to recover, because it is admitted he has never received an aeronautical rating as a pilot of service types of aircraft. In 1921 he was rated as a balloon observer. In the years 1922 to 1923 he attended an airship school with a view of qualifying as an airship pilot, but he was unable to complete the course on account of sickness, and did not receive such a rating.
However, on June 16, 1986 Congress passed an Act (49 Stat. 1524, 1525), section 3 of which amended the above quoted provision of section 2 of the Act of July 2, 1926, by changing the definition of a flying officer to read as follows:
* * * A flying officer in time of peace is defined as one who has received an aeronautical rating as a pilot of service types of aircraft or one who has received an aeronautical rating as an aircraft observer: Provided, That in time of peace no one may be rated as an aircraft observer unless he has previously qualified as a pilot. * * *
*269 Plaintiff claims that because he had been rated as a balloon observer, and since, in order to be rated as a balloon observer, one must be qualified to pilot a free balloon, he comes within the provisions of the Act of 1936. We do not think this Act is susceptible of such a construction.
When plaintiff was rated as a balloon observer, there was no such rating as a balloon pilot; in fact, piloting a balloon consists of nothing more than releasing ropes or weights in order to rise, and releasing gas in order to descend. It is possible to exercise but little control over the direction of a spherical balloon unequipped with a motor or other necessary means of navigation. This can be done only by taking advantage of air currents, so far as this is possible by raising or lowering the height of the balloon. The- necessary training for raising or lowering a balloon was but a small part of the training of a balloon observer, as is shown by plaintiff’s testimony as to the course of instruction received by him to qualify him to secure the rating of a balloon observer. He states:
• The course of instruction consisted of organization and administration, theory of ballooning and aero-statics, free ballooning and captive ballooning, instruments, balloon winches, machine guns, gas aero-dynam-ics, meteorology, telephony, radio, pigeons, laison [liaison] artillery, cooperation with artillery, cooperation with infantry, general observation and surveyance, [sic] chart room, method of orientation, method of observation, perspective and panoramic drawing, aerial photography. * * *
Learning sector, orientation, locating active hostile batteries, salvo shoots—
tfc 0%: * Hí ❖
* * * Artillery regelage and barrage, and the rest of it is course map preparations for shoots, lectures * * *.
When the Act of 1936 was passed enlarging the meaning of a flying officer by including not only persons rated as pilots but also persons rated as observers, with the proviso that an observer must have been qualified previously as a pilot, we think Congress had in mind those observers who had previously been rated as pilots, but- who, on account of physical disability, were no longer able to perform the duties *270 of a pilot, but who were still able to perform the duties of an observer. Cf. Holland v. United States, 88 C. Cls. 341. Plaintiff has never been rated as a pilot.
When the Act uses the expression “qualified as a pilot,” we think it refers to one who has passed the required course for a rating as a pilot. It is conceded that plaintiff has never passed any course entitling him to a rating of a pilot. The only course he has passed is a course to qualify him as an observer. He was unable to complete his course to qualify as a pilot.
The report of the Committee on Military Affairs of the House indicates that this was the intent of Congress. On page 8 of this report (H. R. No. 2359, 74th Cong., 2d sess.) it is said:
Section 3 proposes a clarification of the term “flying officer” as used in the act of July 2, 1926. At present the legal interpretation of the language used in the Act, defines a “flying officer” as an active pilot only. Therefore, those pilots who have become disqualified for duty as active pilots because of minor physical defects but who are still capable of performing flying duty such as commanders, navigators, bombers, gunners, or observers are by law classified as nonflying officers.
The effects of existing legislation are harmful in that selected, highly trained officers are denied the opportunity to command flying units of the Air Corps only because they cannot meet the rigid physical standards required of active combat pilots. Modern developments in aircraft and its employment indicate clearly that in command positions it is most desirable to relieve the commander from the actual task of piloting the airplane. The committee believes that Air Corps officers who have had long experience in flying as a pilot and who have acquired extended military education are the logical commanders of air units. It seems contrary to the dictates of common sense to deprive the Air Corps of the services of these highly trained officers during the period when they are most valuable. The committee also believes -that an Air Corps officer should be assured the opportunity to command air units when he grows older and more experienced.
In brief, the proposed bill guarantees at all times a command and control personnel that has the back *271 ground of piloting experience, thus assuring an active, flying organization wherein the long experience of older pilots is not discarded but, on the other hand, used to the maximum extent.
Ü: * * * H*
Plaintiff has never qualified or been rated as a pilot of service types of aircraft and, therefore, although an observer, is not entitled to the benefits of the Act of June 16, 1936, supra.
It results that plaintiff’s petition must be dismissed. It is so ordered.
MaddeN, Judge; JoNES, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.